(229 P.3d 399)
No. 101,157

STATE OF KANSAS, *Appellee,* v. ERIC WHETSTONE, *Appellant.*

Opinion filed
April 22, 2010.

*Michelle Davis,* of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers,* assistant district attorney, *Chadwick J. Taylor,* district attorney, and *Steve Six,* attorney general, for appellee.

Before RULON, C.J., GREENE, J., and KNUDSON, S.J.

KNUDSON, J.: In this direct appeal after a jury trial, Eric Whetstone contends his convictions for two counts of criminal threat are

multiplicitous. He further contends the district court committed prejudicial error in failing to give the jury a limiting instruction regarding other crimes evidence presented at trial.

We conclude: (1) Whetstone's convictions for criminal threat are multiplicitous; and (2) the K.S.A. 60-455 issue has not been preserved for appeal. Accordingly, we affirm in part and reverse one count of criminal threat, and the sentence for that conviction is vacated. We remand for resentencing on the two remaining convictions.

*The Multiplicity Issue*

The parties agree that for purposes of analysis, Whetstone made one threat that was communicated to two individuals; specifically, he communicated the threat to "burn down the house and kill [them] all." As a result, he was charged with and convicted of two counts of criminal threat for a threat to "[c]ommit violence communicated with intent to terrorize another," as proscribed in K.S.A. 21-3419(a)(1). The issue on appeal is whether Whetstone's convictions are multiplicitous.

Multiplicity is the charging of a single offense in several counts of the complaint. *State v. Gomez*, 36 Kan. App. 2d 664, Syl. ¶ 1, 143 P.3d 92 (2006). Multiplicity creates the potential for multiple punishments for a single offense in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights. *State v. Schoonover*, 281 Kan. 453, Syl. ¶ 10, 133 P.3d 48 (2006). The issue of whether convictions are multiplicitous is a question of law subject to unlimited review on appeal. *Schoonover*, 281 Kan. at 462.

K.S.A. 21-3419(a)(1) defines a criminal threat as any threat to:

"Commit violence communicated with intent to terrorize *another*, or to cause the evacuation of any building, place of assembly or facility of transportation, or in reckless disregard of the risk of causing such terror or evacuation." (Emphasis added.)

In *Schoonover*, the Kansas Supreme Court developed a two-component analytical framework for the resolution of multiplicity issues: "(1) Do the convictions arise from the same conduct? and (2) By statutory definition are there two offenses or only one?" 281

Kan. at 496. In the present appeal the parties agree that the two charges for criminal threat arose from one utterance; consequently, the only issue is whether K.S.A. 21-3419(a)(1) allows for multiple convictions for the same threat.

When inquiring into *Schoonover*'s second component, whether the statutory definition allows for multiple violations of a single statute, the Kansas Supreme Court instructs this court to apply the "unit of prosecution test." 281 Kan. at 497. "[T]he test is: How has the legislature defined the scope of conduct which will comprise one violation of the statute?" 281 Kan. at 497. This defined scope of prohibited conduct determines the allowable unit of prosecution for which there can only be one conviction for a single act. 281 Kan. at 497-98. "The determination of the appropriate unit of prosecution is not necessarily dependent upon whether there is a single physical action or a single victim. Rather, the key is the nature of the conduct proscribed." 281 Kan. at 472. The key to determining the unit of prosecution is legislative intent. 281 Kan. at 471.

In determining legislative intent under K.S.A. 21-3419(a)(1), we would note paragraph (a)(1) has discrete subparts to be considered depending on whether proscribed conduct is directed toward a person or an occupied structure. It is apparent from a plain reading of the statute that the number of persons in an occupied building, place of assembly, or facility of transportation to be evacuated is not of elemental value. Consequently, we must ask, under the first subpart of paragraph (a)(1), did the legislature intend multiple prosecutions for a single criminal threat directed to more than one person?

In *State v. Wright*, 259 Kan. 117, 911 P.2d 166 (1996), the court held K.S.A. 1994 Supp. 21-3419 did not require the State to prove the defendant knew his or her threat would be communicated to the victim. The court held the State need only present evidence of an intent to terrorize or an act in reckless disregard of causing such terror. 259 Kan. at 122. Thus it is not required under 21-3419 that the threat be communicated to the victim; it just has to be communicated to someone. *Wright* supports our conclusion that the unit of prosecution is the making of a threat to commit violence

communicated to another. See *State v. Woolverton,* 284 Kan. 59, 159 P.3d 985 (2007).

K.S.A. 21-3110 states:

"The following definitions shall apply when the words and phrases defined are used in this code, except when a particular context *clearly* requires a different meaning.

. . . .

"(2) '*Another*' *means a person or persons* as defined in this code other than the person whose act is claimed to be criminal." (Emphasis added.)

There is nothing in the context of K.S.A. 21-3419(a)(1) that would clearly require a different meaning for "another" within the phrase "intent to terrorize another" than as provided in K.S.A. 21-3110. Consequently, we hold "another" in the criminal threat statute to mean a person or persons. Our interpretation renders the first subpart of K.S.A. 21-3419(a)(1) consistent with the remaining subparts of paragraph (a)(1); that is to say, the number of persons to whom the threat is communicated does not determine the unit of prosecution. Accordingly, a plain reading of the statute requires us to hold that Whetstone's convictions for two counts of criminal threat are multiplicitous.

Moreover, under both federal and state law, the unit of prosecution is evaluated with "a rule of lenity." *Gomez,* 36 Kan. App. 2d at 670. The rule of lenity derives from the United States Supreme Court's pronouncement that "[w]hen Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Schoonover,* 281 Kan. at 472 (quoting *Bell v. United States,* 349 U.S. 81, 83, 99 L. Ed. 905, 75 S. Ct. 620 [1955]). In application, when the legislature fails to provide a unit of prosecution that " 'clearly and without ambiguity' " allows two convictions for the same act, only one conviction will be allowed. 281 Kan. at 472. Consequently, as there is an ambiguity as to legislative intent, we reach the same conclusion: Whetstone's convictions are multiplicitous.

*Failure to Give a K.S.A. 60-455 Instruction*

Whetstone also challenges the trial court's failure to give a limiting instruction for evidence he contends was only admissible un-

der K.S.A. 60-455. The record on appeal discloses Whetstone did not file a motion in limine or object to the evidence when introduced at trial. Our Supreme Court has held that when a defendant fails to object to admission of 60-455 evidence, he or she fails to preserve the issue for appeal. *State v. King,* 288 Kan. 333, 348, 204 P.3d 585 (2009). Accordingly, Whetstone's failure to provide a timely and specific objection to the challenged evidence precludes appellate review of this issue.

*Conclusion*

We affirm in part, reverse in part, and remand with directions.